CALL & JENSEN
A Professional Corporation
Joshua G. Simon, Bar No. 264714
jsimon@calljensen.com
Sameer Hussain, Bar No. 340386
shussain@calljensen.com
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel:   (949) 717-3000
Fax:   (949) 717-3100

Attorneys for Plaintiff DAYCO INDUSTRIES, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| DAYCO INDUSTRIES, LLC, a Minnesota limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>REGG INSPECTION CORP., a domestic profit corporation; REGG ROLLING, a foreign corporation; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR**<br>　**1. BREACH OF CONTRACT**<br>　**2. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**<br>　**3. BREACH OF THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**<br>　**4. BREACH OF EXPRESS WARRANTY**<br><br>**DEMAND FOR JURY TRIAL** |
|---|---|

Plaintiff DAYCO INDUSTRIES, LLC ("Plaintiff" or "Dayco"), by and through its attorneys, brings this Complaint against Defendants REGG ROLLING and REGG INSPECTION CORP. (collectively "Defendants") and hereby alleges as follows:

## NATURE OF ACTION

1. This is an action brought by Plaintiff, a leading metals distributor representing a global network of primary mills and secondary manufacturers, against Defendants for providing a defective high fin rolling machine (model 3R400HD PLC) ("Machine") and also failing to reimburse Plaintiff the full cost of the defective machine along with other incidental damages in the amount of $869,114.00. Plaintiff entered into a purchase agreement ("Agreement") with Defendants to purchase the Machine on or about January 5, 2021. ("**Exhibit A**"). After taking delivery of the Machine on or about February, 2021, Plaintiff noticed that the Machine was failing to perform and produce high fin tubing in accordance with the specifications outlined in the Agreement.

2. Plaintiff engaged in numerous correspondence with Defendants for well over two years relating to the nonperformance of the Machine. Not only are Defendants in breach of numerous express and implied warranties, Defendants are also in breach of the contract entered into with Plaintiff for the purchase of the Machine by providing a defective Machine to Plaintiff along with failing to reimburse Plaintiff the cost of the defective Machine. By this Complaint, Plaintiff seeks damages, and other remedies provided for by law to remedy injuries caused by Defendants and DOES 1 through 10 for claims of breach of contract, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, and breach of express warranty.

## PARTIES

3. Plaintiff is and was at all times mentioned in this Complaint is a limited liability company organized and existing under the laws of Minnesota, and doing business in California, with its principal place of business located in Mira Loma, California. Plaintiff is owned by three separate S-Corporations with the first organized

1  in Minnesota and doing business in California, the second organized and doing business in Iowa, and the third organized in Iowa and doing business in Illinois. Therefore, Plaintiff is a citizen of the states of California, Iowa, and Illinois for diversity jurisdiction purposes.

4. Defendant REGG ROLLING was and at all times mentioned in this Complaint is a foreign corporation organized and existing under the laws of Italy, with a principal place of business located in Italy.

5. Defendant REGG INSPECTION CORP. was and at all times mentioned in this Complaint is a domestic profit corporation organized and existing under the laws of Michigan with its principal place of business also in Michigan.

6. Plaintiff is ignorant of the true names and capacities of defendants sued as DOES 1-10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at all times mentioned in this Complaint, DOES 1-10 were the agents and employees of their co-defendants or otherwise responsible for the conduct complained of herein, and in doing the things alleged in this Complaint were acting within the course and scope of that agency and employment or were otherwise responsible for the damages complained of by Plaintiff.  Plaintiff will amend this Complaint to allege its true names and capacities when ascertained.

## JURISDICTION AND VENUE

7. The Court has original jurisdiction in this action under 28 U.S.C. § 1332, in that there is complete diversity between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Venue is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District. Defendants have also acknowledged that venue would be proper in California because that is where the Machine was delivered and the underlying transaction took place.

///

9. Defendants are subject to personal jurisdiction in this district under Federal Rules of Civil Procedure Rule 4(k)(1)(A) and California Code of Civil Procedure section 410.10.

## ALTER EGO ALLEGATIONS

10. At all relevant times, as alleged more fully herein, each Defendant acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint venturer of the other Defendants, and in doing the things alleged herein acted within the course and scope of such agency, employment, alter-ego and/or in furtherance of the joint venture. Each of the Defendant's acts alleged herein was done with the permission and consent of each of the other Defendants.

11. At all times relevant hereto, Defendant Regg Rolling is the alter ego of Defendant Regg Inspection Corp., and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Defendants such that any separateness between them has ceased to exist in that Defendant Regg Inspection Corp. completely controlled, dominated, managed, and operated the other Defendants to suit its convenience.

12. At all times relevant thereto, Defendant Regg Rolling was not only influenced and governed by Defendant Regg Inspection Corp., but there was such a unity of interest and ownership that the individuality, or separateness, of Regg Rolling and Regg Inspection Corp. has ceased, and that the facts are such that an adherence to the fiction of the separate existence of these entities would, under the particular circumstances, sanction a fraud or promote injustice.

13. Plaintiff is informed and believes that at all relevant times mentioned herein, the acts of the business entities involved were performed by an employee, agent, officer, servant and/or representative of Regg Inspection Corp. and Regg Rolling.

## FACTUAL ALLEGATIONS

14. Since 1997, Plaintiff has been a leading metals distributor representing a global network of primary mills and secondary manufacturers that provides stainless

steel and aluminum parts for the aftermarket automotive, bath and shower, pool and spa, and plumbing industries. Plaintiff partners with world class manufacturers around the world to be among the first to establish internationally sourced, just-in-time delivery capabilities.

15. Defendants design and manufacture inspections systems with modular design. The machines manufactured by Defendants can be equipped with vision systems, mechanical recess control, 360 degree profile check, eddy current crack detection, hardness control, and other special applications. Defendants also manufacture machinery capable of producing high-fin tubing. Defendants employ a service center with technicians based in all major markets to support the machinery it sells.

16. On or about January 5, 2021, Plaintiff entered into the Agreement to purchase the Machine from Defendants in order to manufacture high fin tubing. Plaintiff took delivery of the Machine on or about February, 2021. In order to pay for the Machine, Plaintiff entered into a loan agreement with Bank of America.

17. The Agreement states that the Machine "must show repeatability which means it must run a consistent batch of 50 pcs without change of dimensions to the finished part. This also needs to be accomplished on fully automatic mode, 50 pcs loaded and run without interruption." (*See* **Exhibit A**). The Agreement also states that "upon failure of testing Dayco reserves the right to return the machine for full credit." *Id.*

18. However, despite repeated efforts by Defendants with assistance and cooperation from Plaintiff and its personnel, Plaintiff quickly began to realize that the Machine was not working in accordance with expectations and subsequently failed to produce tubing that met the specifications outlined in the Agreement.

19. On or about July 15, 2021, Plaintiff sent Defendants an e-mail regarding the repeated nonperformance of the Machine in which Plaintiff described the various defects related to both the proper functioning of the machine, including but not limited to, the failure to run more than 2 parts without dimension changes, tube stoppages and

being gouged, as well as the failure to produce tubes in accordance with the specifications outlined in the Agreement.

20. Plaintiff continued to complain of the Machine's defective performance for well over two years in which it became clear that the Machine was not capable of performing to the minimum specified standard and consistently failed all related testing.

21. On or about November 13, 2023, Plaintiff sent a letter to Defendants to exercise its right under the Agreement to return the Machine for reimbursement that included the full price of the Machine as well as all tooling paid for by Plaintiff which totaled $805,705.08.

22. On or about November 20, 2023, Defendants sent a letter to Plaintiff containing numerous inaccuracies and misstatements regarding two-years' worth of issues involving the Machine that included stating that the coolant and a lack of material was contributing to the Machine being unable to produce ten tubes in automatic, the tooling was outside the scope of the Agreement, and that the Machine successfully rolled ten consecutive tubes that met the specifications outlined in the agreement.

23. On or about November 29, 2023, Plaintiff sent a letter responding to the many misstatements and characterizations made by Defendants in the November 20, 2023 letter. Within the November 29, 2023 letter, Plaintiff communicated that the Machine was unable to run ten consecutive tubes in automatic along with failing to produce tubes that met specifications outlined in the Agreement and that production of the requisite tubes was not hindered by a lack of materials. Plaintiff also communicated that Defendants bore responsibility for the tooling for the Machine pursuant to the Agreement.

24. Among the issues Plaintiff raised in the November 29, 2023 letter was related to tendering the final payment for the Machine by Plaintiff to Defendants. In the November 20, 2023 letter sent by Defendants, Defendants stated that Plaintiff tendered full payment for the Machine because Plaintiff recognized that the Machine was meeting the performance requirements specified in the Agreement.

25. However, in reality, Plaintiff tendered full payment because the standard for payment as specified in the Agreement had been met. The standard specified in the Agreement required that final payment would be due once the Machine was installed, running and produced any one of the three parts to print tolerances. Plaintiff acknowledged that the Machine produced one of the single tubes to print tolerance, and as a result performed its contractual obligation by tendering the final payment. Notably, Plaintiff's final payment was made notwithstanding the fact that the Machine was not able to produce ten consecutive specification compliant tubes in automatic without interruption, let alone the required fifty.

26. In an effort to distort reality and shift responsibility for breaching the Agreement, Defendants also claimed that the emails that were included with its November 20, 2023 letter purported to confirm that Plaintiff had assumed responsibility for the tooling. However, the emails included were from February and June of 2018 whereas the Agreement was dated January 5, 2021. Additionally, Defendants tried to use Plaintiff's attempts to suggest alternate designs that could help with the proper functioning of the Machine as a sign that Plaintiff were assuming full responsibility for the tooling.

27. On information and belief, Plaintiff entered into the Agreement and made the financial investment of $805,705.08 to have a fully functioning machine that would produce high fin tubing according to specifications which would require both the Machine and the tooling. To crystallize this understanding, the Machine and the tooling were both included in the Agreement. (*See* **Exhibit A**).

28. Ultimately, the Machine never performed according to expectations. In fact, even Defendants' service engineer was unable to run more than one tube at a time and after each tube had to make adjustments to the Machine. Even the tubes that were ultimately produced contained deficiencies such as ruptures. Additionally, during the operation of the Machine, a number of the tooling broke which further indicated the faulty nature of the Machine.

29. In its November 29, 2023 letter, after recognizing the continued nonperformance of the Machine, Plaintiff requested a reimbursement for the payments made to Defendants for the Machine in the amount of $805,705.08. Plaintiff also requested that Defendants assume the cost of removing and shipping the defective Machine along with the remaining tooling.

30. On or about December 20, 2023, Defendants responded and declined Plaintiff's requests by proposing that a US service engineer would provide remote or on-site support along with extra tooling to reach the target which (after two years of nonperformance) Defendants described as being "close." If the proposal was successful, Defendants requested that Plaintiff pay the full open invoice including the additional remote and on-site support provided by the US service engineer. Defendants also proposed that it would support Plaintiff in promoting the sales of the Machine for the next eight months but all costs would be Plaintiff's to bear.

31. In response to Defendants' proposals, Plaintiff attempted to avoid judicial intervention one final time and offered Defendants the opportunity to sell the Machine to another party with the entire purchase price being paid to Plaintiff and any excess going to Defendants. If the purchase price was less than the $805,705.08, the shortfall would be divided equally between Plaintiff and Defendants. In an effort to facilitate resolution, Plaintiff even offered to house the Machine in its facility for a certain amount of time until it was sold. If the Machine was not sold, then Plaintiff would be entitled to reimbursement of the $805,705.08 amount.

32. On or about August 3, 2024, Defendants informed Plaintiff that they also refuse to buy back the defective Machine and claimed that Plaintiff had informed Defendants that Plaintiff possessed "specific expertise in both extrusion disc design and production operation" and would provide specialists. Defendant also claimed they would not have produced the Machine without Plaintiff's assurances. However, Plaintiff never made any such misrepresentation to Defendant and relied on Defendant's

expertise to produce a functional product that would not work according to specifications even when Defendants' own engineers were present.

33. On information and belief, Defendants have failed to reimburse Plaintiff the $805,705.08 for the defective Machine that has failed to perform in accordance with expectations since Plaintiff first accepted delivery. Further, as a result of the loan agreement entered into with Bank of America to pay for the Machine, Plaintiff has accrued $63,408.92 in interest that continues to accrue at the rate of 4.30%. Therefore, to date, Plaintiff has incurred $869,114.00 in damages as a result of Defendants' breach of the Agreement as well as various implied and express warranties.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

34. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 33 as if fully set forth herein.

35. On or about January 5, 2021, Plaintiff entered into the Agreement to purchase the Machine from Defendants for $805,705.08. (*See* **Exhibit A**). Plaintiff took delivery of the Machine on or about February, 2021. The Agreement specified that final payment by Plaintiff would be tendered once the Machine was installed, running, and produced one of three parts to print tolerances.

36. The Agreement contained specific requirements for the Machine to produce fifty specification compliant tubes. For example, The Agreement states that the Machine "must show repeatability which means it must run a consistent batch of 50 pcs without change of dimensions to the finished part. This also needs to be accomplished on fully automatic mode, 50 pcs loaded and run without interruption." *Id.* The Agreement also states that "upon failure of testing Dayco reserves the right to return the machine for full credit. The incoming mother tubes must meet the required print tolerances, specifically straightness, concentricity, dry and with the correct grain size." *Id.*

///

37. Since taking delivery of the Machine, Plaintiff realized that the Machine was not working in accordance with expectations and subsequently failed to produce tubes that met the required specifications outlined in the Agreement. For over two years following execution of the Agreement, Plaintiff communicated numerous defects to Defendants regarding the proper functioning of the Machine as early as July 15, 2021 (shortly after accepting delivery) including but not limited to the failure to run more than 2 parts without dimension changes, tube stoppages and being gouged, as well as the failure to produce tubes in accordance with the specifications outlined in the Agreement. Even when the Machine would produce tubing, it would be defective or faulty in the form of ruptures to the tubing itself.

38. Plaintiff continued to complain of the Machine's defective performance for well over two years in which it became clear that the Machine was not capable of performing to the minimum specified standard and consistently failed all related testing.

39. In an attempt to explain the various deficiencies Plaintiff complained of, Defendants blamed a purported lack of materials even though a lack of material was never the reason behind the deficiencies in tubing production.

40. Plaintiff satisfied their obligations under the Agreement by tendering final payment since the Machine produced one of the single tubes to print tolerance. Notably, notwithstanding Plaintiff's final payment, the Machine was not able to produce ten consecutive specification compliant tubes without interruption let alone the fifty that were required by the Agreement.

41. Except as excused by the acts, breaches and omissions of Defendants, Plaintiff has performed all conditions, covenants and promises required by it to be performed in accordance with the terms and conditions of the Agreement.

42. Defendants breached the Agreement because the Machine failed to perform in accordance with expectations and subsequently failed to produce specification compliant tubing for over two years after the Agreement was executed.

///

43. Despite multiple attempts by Plaintiff to resolve the breach amicably, Defendants refuse to remedy its breach.

44. As a result of Defendants' breach, Plaintiff not only spent substantial time and effort, but also paid for installation of specialized cooling equipment, electrical power, and infrastructure to accommodate the Machine. Additionally, Plaintiff also lost many opportunities to meet the demand of the market which has caused harm to Plaintiff's past and future earnings. Further, as a result of the loan agreement entered into with Bank of America to pay for the Machine, Plaintiff has accrued $63,408.92 in interest that continues to accrue at the rate of 4.30%.

45. Plaintiff has been damaged in an amount to be determined at trial, and which exceeds, at a minimum, the sum of $869,114.00. Plaintiff will set forth the full extent and nature of its damages at trial.

## SECOND CAUSE OF ACTION

### (Breach of Implied Warranty of Merchantability)

### (Cal. Comm. Code §2314)

46. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 45 as if fully set forth herein.

47. Defendants are and at all relevant times was a merchant with respect to goods of the kind which it sold to Plaintiff.

48. As alleged above, the parties formed a contract through Plaintiff's execution of the Agreement on or about January 5, 2021, Defendants' delivery of the Machine and Plaintiff's subsequent acceptance thereof on or about February, 2021.

49. Plaintiff purchased the Machine from Defendants in order to manufacture high fin tubing in accordance with the specifications outlined in the Agreement.

50. Since acceptance of the delivery on or about February, 2021, Plaintiff realized that the Machine did not have the quality that it reasonably expected. For example, the Machine suffered from defects, including but not limited to, the failure to run more than 2 parts without dimension changes, tube stoppages and being gouged, as

well as the failure to produce tubes in accordance with the specifications outlined in the Agreement. Even when the Machine would produce tubing, it would be defective or faulty in the form of ruptures to the tubing itself.

51. Plaintiff performed its obligations under the Agreement at all times by, among other things, tendering final payment since the Machine produced one of the single tubes to print tolerance. Notwithstanding Plaintiff's final payment, the Machine was not able to produce ten consecutive specification compliant tubes without interruption let alone the fifty that were required by the Agreement.

52. Implied warranties of merchantability were therefore part of the contract formed between the parties.

53. Defendants breached the implied warranties of merchantability in that the defective Machine it sold and delivered to Plaintiff under the contract were not of fair, average quality within the contractual descriptions, could not pass without objection in the trade under the contractual description and were not fit for the ordinary purposes for which such goods were used. As a result of Defendants' breaches, Plaintiff did not receive goods as warranted by Defendants.

54. As a result of Defendants' breach of such implied warranties, Plaintiff not only spent substantial time and effort, but also paid for installation of specialized cooling equipment, electrical power, and infrastructure to accommodate the Machine. Additionally, Plaintiff also lost many opportunities to meet the demand of the market which has caused harm to Plaintiff's past and future earnings. Further, as a result of the loan agreement entered into with Bank of America to pay for the Machine, Plaintiff has accrued $63,408.92 in interest that continues to accrue at the rate of 4.30%.

55. As a result of Defendants' breach of such implied warranties, Plaintiff has been damaged in an amount to be determined at trial, and which exceeds, at a minimum, the sum of $869,114.00.

///

///

# THIRD CAUSE OF ACTION

## (Breach Of The Implied Warranty Of Fitness For A Particular Purpose)

## (Cal. Comm. Code §2313)

56. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 55 as if fully set forth herein.

57. Defendants are and at all relevant times was a merchant with respect to goods of the kind which it sold to Plaintiff.

58. As alleged above, the parties formed a contract through Plaintiff's execution of the Agreement on or about January 5, 2021, Defendants' delivery of the Machine and Plaintiff's subsequent acceptance thereof on or about February, 2021.

59. As a Manufacturer of the kind of equipment needed to manufacture high fin tubing, Plaintiff relied on Defendants' expertise and representations as an elite manufacturer by agreeing to purchase the Machine from Defendants to produce tubing in accordance with the specifications outlined in the Agreement.

60. Defendants had knowledge that Plaintiff was entering into the Agreement to purchase the Machine to produce high fin tubing because the Agreement clearly stated that the Machine "must show repeatability which means it must run a consistent batch of 50 pcs without change of dimensions to the finished part. This also needs to be accomplished on fully automatic mode, 50 pcs loaded and run without interruption." (*See* **Exhibit A**).

61. Since acceptance of the delivery, Plaintiff realized that the Machine did not have the quality that it reasonably expected and were specified in the Agreement. For example, the Machine suffered from defects, including but not limited to, the failure to run more than 2 parts without dimension changes, tube stoppages and being gouged, as well as the failure to produce tubes in accordance with the specifications outlined in the Agreement. Even when the Machine would produce tubing, it would be defective or faulty in the form of ruptures to the tubing itself.

///

62. Defendants breached the Implied Warranty of Fitness for a Particular Purpose in that the defective Machine it sold and delivered to Plaintiff under the contract were not of fair, average quality within the contractual descriptions, could not pass without objection in the trade under the contractual description and were not fit for the for the purpose of manufacturing high fin tubing in accordance with the specifications outlined in the Agreement. As a result of Defendants' breaches, Plaintiff did not receive goods as warranted by Defendants.

63. As a result of Defendants' breach of the Implied Warranty of Fitness for a Particular Purpose, Plaintiff not only spent substantial time and effort, but also paid for installation of specialized cooling equipment, electrical power, and infrastructure to accommodate the Machine. Additionally, Plaintiff also lost many opportunities to meet the demand of the market which has caused harm to Plaintiff's past and future earnings. Further, as a result of the loan agreement entered into with Bank of America to pay for the Machine, Plaintiff has accrued $63,408.92 in interest that continues to accrue at the rate of 4.30%.

64. As a result of Defendants' breach of such implied warranties, Plaintiff has been damaged in an amount to be determined at trial, and which exceeds, at a minimum, the sum of $869,114.00.

## FOURTH CAUSE OF ACTION
### (Breach of Express Warranty)
### (Cal. Comm. Code §2315)

65. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 64 as if fully set forth herein.

66. Defendants are and at all relevant times was a merchant with respect to goods of the kind which it sold to Plaintiff.

67. As alleged above, the parties formed a contract through Plaintiff's execution of the Agreement on or about January 5, 2021, Defendants' delivery of the Machine and Plaintiff's subsequent acceptance thereof on or about February, 2021.

68. Pursuant to the Agreement, Defendants expressly warranted that the Machine "will be free from defects in material and workmanship and will produce high fin hollow copper tubing in accordance with the attached specification without error." (*See* Exhibit A). This express warranty was to last twelve months starting from the date the Machine was set up and no later than 30 days from the date of shipment from the factory. *Id.*

69. As alleged above, Plaintiff realized the Machine suffered from defects, including but not limited to, the failure to run more than 2 parts without dimension changes, tube stoppages and being gouged, as well as the failure to produce tubes in accordance with the specifications outlined in the Agreement. Even when the Machine would produce tubing, it would be defective or faulty in the form of ruptures to the tubing itself.

70. Plaintiff gave reasonable notice by making Defendants aware of the various defects of the Machine mentioned above as early as July 15, 2021 via e-mail and proceeded to spend over two years working with and cooperating with Defendant to remedy the defects and satisfy the minimum standards outlined in the Agreement.

71. Defendants' delivery of the defective Machine and failure to remedy the various defects that Plaintiff made Defendants aware of constituted a breach of the express warranties provided in the Agreement.

72. As a result of Defendants' breach of Express Warranty, Plaintiff not only spent substantial time and effort, but also paid for installation of specialized cooling equipment, electrical power, and infrastructure to accommodate the Machine. Additionally, Plaintiff also lost many opportunities to meet the demand of the market which has caused harm to Plaintiff's past and future earnings. Further, as a result of the loan agreement entered into with Bank of America to pay for the Machine, Plaintiff has accrued $63,408.92 in interest that continues to accrue at the rate of 4.30%.

///

///

73. As a result of Defendants' breach of express warranty, Plaintiff has been damaged in an amount to be determined at trial, and which exceeds, at a minimum, the sum of $869,114.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, as to all counts of its Complaint, as follows:

1. Actual, incidental, general, special and consequential damages in an amount according to proof at trial;

2. Reasonable attorney's fees and costs of suit to the fullest extent allowed by law and/or contract;

4. Pre and Post judgment interest on all amounts claimed as permitted by law; and

5. For such other and further relief as this Court may deem proper.

Dated: September 6, 2024

CALL & JENSEN
A Professional Corporation
Joshua G. Simon
Sameer Hussain

By: */s/ Sameer Hussain*
     Sameer Hussain

Attorneys for Plaintiff Dayco Industries, LLC

# **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues raised in the Complaint.

Dated: September 6, 2024

CALL & JENSEN
A Professional Corporation
Joshua G. Simon
Sameer Hussain

By: */s/ Sameer Hussain*
     Sameer Hussain

Attorneys for Plaintiff DAYCO INDUSTRIES, LLC